SENN, Appellant, vs. TILE LAYERS PROTECTIVE UNION, LOCAL No. 5, and others, Respondents.

*June 4—September 15, 1936.*

386

For the appellant there was a brief by *Lamfrom, Tighe,
Engelhard & Peck,* attorneys, and ·*Leon B*. *Lamfrom* of

counsel, all of Milwaukee, and oral argument by *Leon B. Lamfrom*.

*Joseph A. Padway* of Milwaukee, for the respondents.

The following opinion was filed June 29, 1936:

FAIRCHILD, J.  Appellant is engaged as a contractor in the tile-setting business in Milwaukee.  He conducts his business as a small concern, and in addition to hiring tile setters, he, himself performs services usually rendered by a journeyman or helper.  It was established on the trial that appellant employed his brother approximately ten per cent of the time; that he entered into a partnership with William Neider, a former union journeyman who gave up his membership in the union to enter into the partnership, and also employed Arnold Holly, a suspended union member.  From May, 1934, to May, 1935, out of a total of one thousand seven hundred seventy-seven hours on jobs, appellant himself worked as tile setter seven hundred seventy-one hours.

There were occasional conferences between appellant and the union officials before this contest developed.  In March, 1935, a contract was submitted to appellant by the unions, Article III of which requires him to refrain from performing the work which it is his custom to perform, and to agree that such work be done by journeymen members of the Tile Layers Protective Union, Local No. 5.  The ultimate object of the negotiations on the part of the respondents was to secure the unionization of appellant's business.  The appellant asserts that he is willing to comply with all requirements covered by the union contracts except those which require him to refrain individually from working as a tile setter or helper.  The dispute arises over the respective contentions thus outlined.  It will readily appear that there are elements involved in this controversy not present in the case of *American Furn. Co. v. I. B. of T. C. & H. of A., etc.,*

*ante,* p. 338, 268 N. W. 250. The demand here by the unions is for the appellant to conform to a definite wage scale prevalent on union jobs, and to conform to a fixed number of hours approved by the union. They also insist that he conform to the rules of apprenticeship and other working conditions prevalent in the industry where union rules prevail. The requirement that the employer personally refrain from working with the tools of the trade is important and vital to the craftsmen affiliated with defendant unions, because the practices sought to be prevented can so readily affect wages and hours of labor. It is pointed out by respondent that the membership in the union has decreased during the depression years, and that as a necessary requisite for a proper existence and livelihood, these craftsmen find it necessary to require employers to comply with the terms of Article III. Appellant's method of conducting his business brings into the situation a direct attack by him upon the means relied upon by the unions to protect their scale of wages, hours, and working conditions against the cutting of prices and lengthening of hours of work.

The respondents insist upon their right to exert economic pressure against one who refuses to bring his shop up to union standards by refusing to agree to the union rules requiring the contractor to abstain from working with the tools of the trade, and on this, base their declaration that a labor dispute exists. There does not seem to be much occasion to question the existence of a dispute between the associations, which are committed to the protection of certain standards of wages and hours, with a contractor engaged in the same craft who proposes to work therein as a journeyman or a helper at a price and during hours that suit him individually and which are below the standard desired by the unions.

The respondents, by the use of the practice of picketing, seek to induce the appellant to abandon his methods and to conform to the union rules. The distinctions between one

engaged in the tile-setting business and one working as a
journeyman or helper is apparent, and if the proposed con-
tract is entered into by appellant, he will bind himself to
respect the union classifications and distinctions.   Appellant
has declined to sign the suggested contract unless there be
eliminated therefrom the provisions which require him to
desist from working with his tools and his helping generally
in the work of installing material.   Respondents insist that
the particular rule to which appellant objects is one in the
furtherance of the legitimate interests of the members of the
unions.   In view of our decision in the *American Furniture
Co. Case, supra*, and the cases there analyzed in the opinion
written by Mr. Justice WICKHEM, it is apparent that, under
the laws of Wisconsin, where the primary purpose of the
acts complained of is to protect and improve the condition of
those whom the unions represent, such action is justifiable,
because it tends to promote the welfare of the members of
the union engaged in the same craft.   There is no effort
to induce or compel the appellant to do any unlawful thing.
If it be assumed that appellant cannot operate his business
successfully upon the conditions insisted upon by the respond-
ents, still no right of appellant now protected by law is
invaded by respondents' efforts to bring appellant's business
to union standard.   *American Furn. Co. v. I. B. of T. C.
& H. of A., etc., supra,* and cases there cited.   No question
exists as to appellant's right to conduct a nonunion shop
under any terms he chooses.   An economic contest has de-
veloped.   Each of the contestants is desirous of the advan-
tage of doing the business in the community where he or they
operate.   He is not obliged to yield to the persuasion exer-
cised upon him by respondents.

The legislature, in outlining the public policy of this state,
has precluded him from an appeal to the courts for assistance
until some unlawful act has become imminent, or something
has occurred to start in motion the administration of equity

rules, or the performance of the duties of policing. The respondents do not question that it is appellant's right to run his own business and earn his living in any lawful manner which he chooses to adopt. What they are doing is asserting their rights under the acts of the legislature for the purpose of enhancing their opportunity to acquire work for themselves and those whom they represent. The nature of the controversy is one in which the court and law enforcing officers can have no interest other than to preserve the equality of each contender before the law, and to require that each refrain from doing any unlawful act. Courts, though differing as to the allowable scope, pretty generally agree that picketing is a legitimate means of economic coercion, if it is confined to persuasion and is free of molestation or threat of physical injury or annoyance. Frankfurter & Green, The Labor Injunction, p. 31.

The respondents' act of peaceful picketing is a lawful form of appeal to the public to turn its patronage from appellant to the concerns in which the welfare of the members of the unions is bound up. As stated by respondents' counsel in their brief, "the public is free to accept or reject the appeal and plaintiff is free to perform all work he can get in whatever manner he wishes to perform it." He may work long hours. He may bid for contracts at a low figure based on low wages for himself and on long hours. In the judgment of respondents, his conduct in this respect affects their opportunity of maintaining a standard of better wages, regulated hours, and improved working conditions, and the collision of the two sets of rights, the one in appellant, the other in the respondents, creates a labor dispute within the definition of the code (secs. 103.51 to 103.63, Stats.). Each appeals to public opinion. If the trade turns from one to the other as a result of this dispute, the injury is incidental, *injuria absque damno*.

It appears that when issue was first joined between the parties, considerable spirit was manifested on both sides, and

evidently acts occurred calculated to intimidate appellant and bring about a secondary boycott. The trial court said:

"That because of their statements made by their counsel in open court and in their presence, that they will not send any more letters to owners, contractors, or architects as hereinbefore referred to, and will not indulge in any of the acts or conduct referred to in said letters, the court concludes that no unlawful acts will be committed or will be executed or continued."

The discretion of the trial court in determining that there is no occasion for a restraining order in the particulars suggested is well within the scope of duties imposed on it. We are of the opinion that no occasion exists for overruling the lower court in this particular, and in other respects the judgment is approved.

*By the Court.*—Judgment affirmed.

FOWLER, J. (*dissenting*). I dissent in this case for the reason that in my opinion the case is not within the labor code, and for the further reason that if it is within the code the picketing involved should be enjoined because it is done to coerce the plaintiff into doing an unlawful act. My reasons for considering the case not within the code and for considering that picketing to coerce the doing of an illegal act will be enjoined, are given in my dissenting opinion in *American Furn. Co. v. I. B. of T. C. & H. of A., etc., ante,* p. 338, 268 N. W. 250. In this connection I will only give my reasons for considering unlawful the act the defendants are seeking to coerce the plaintiff to do.

The picketing involved is done by the defendants for the purpose of coercing the plaintiff into signing a contract that is unlawful because it is in restraint of trade. Every contract in restraint of trade is illegal under the public policy of the state, as declared by sec. 133.01, Stats. A contract that restricts a promisor in the exercise of a gainful occupation is a contract in restraint of trade. Every such contract is

invalid if the restraint is unreasonable. Every restraint in such a contract is unreasonable if it is greater than is necessary for the protection of the persons for whose benefit the restraint is imposed or if it imposes undue hardship on the person restricted. *Milwaukee Linen Supply Co. v. Ring,* 210 Wis. 467, 470, 246 N. W. 567; Restatement, Contracts, §§ 513, 514, 515. In my opinion the proposed contract violates both these conditions of validity. The plaintiff could not do business as a contractor under the proposed contract without foregoing his right to labor in connection with his business, and if he gave up his business as a contractor his opportunity to work at his trade as a layer of tile would be diminished or destroyed because of exclusion from membership in the defendant union because he has not served three years as an apprentice under a journeyman tile layer. It is nonsense to claim that three years of such apprenticeship is necessary to enable a competent plasterer to lay tile. It is without dispute that the plaintiff was a competent plasterer before he took up the trade of laying tile, and it is without dispute that he is now a competent tile layer. The unreasonableness of the requirement of apprenticeship ties up with the unreasonableness of the restriction of the plaintiff's right to follow his chosen occupation of a tile layer and as a contractor of tile jobs.

The requirement that the plaintiff sign the contract proposed is an unreasonable requirement, in my opinion, for the protection of the defendants against the competition of the plaintiff, and it certainly is unreasonable in imposing such a hardship upon him as it does impose. Such contracts as the instant one are invalid because they tend "to deprive the public of the services of persons in those capacities in which they are most useful, and also tend to expose the public to the evils of monopoly." *Tecktonius v. Scott,* 110 Wis. 441, 449, 86 N. W. 672.

While the above is sufficient in my opinion to require reversal of the judgment herein and the granting of an injunction, I wish to say further that in the instant case, however it may be in the *American Furniture Co. Case, supra,* the picketing involved in my opinion deprives the plaintiff of liberty and property without due process of law. The Fifth amendment to the constitution of the United States declares that no person shall be so deprived. If no person shall be so deprived, then no person shall so deprive him. Injury to business is deprivation of property. *Truax v. Corrigan,* 257 U. S. 312, 42 Sup. Ct. 124, 128. To deprive one of his right to labor is to deprive him of his liberty. *Allgeyer v. Louisiana,* 165 U. S. 578, 589, 17 Sup. Ct. 427, 431, 41 L. Ed. 832. Under the facts of the case, the picketing involved injures the plaintiff's business, deprives him of opportunity to labor, and inflicts irreparable injury upon him for which he has no adequate remedy at law. Hence the picketing should be enjoined, unless the injury resulting to the plaintiff from it is effected through due process of law.

"The right to follow any of the common occupations of life is an inalienable right. . . . It is a large ingredient in the civil liberty of the citizen. . . . The right to follow any of the ordinary callings of life—is one of the privileges of a citizen of the United States."

*Butchers' Union Co. v. Crescent City Co.* 111 U. S. 746, 762, 764, 765, 4 Sup. Ct. 652, 657. The liberty mentioned in the Fifth amendment as well as the Fourteenth amendment "means not only the right of the citizen to be free from the mere physical restraint of his person, as by incarceration, but the term is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or avocation; and for that purpose to enter into all

contracts which may be proper, necessary, and essential to his carrying out to a successful conclusion the purposes above mentioned." *Allgeyer Case, supra.* As quoted in *Cameron v. International Alliance,* 118 N. J. Eq. 11, 176 Atl. 692, 698:

" 'There is no more sacred right of citizenship than the right to pursue unmolested a lawful employment in a lawful manner. It is nothing more nor less than the sacred right of labor.' "

"The right of a workman to the 'free use of his hands' has been described as one 'of which the legislature cannot deprive him, one which the law of no trades union can take from him, and one which it is the bounden duty of the courts to protect.' *Erdman v. Mitchell,* 207 Pa. 79, 56 Atl. 327, 331. 'A man may not barter away his life or his freedom, or his substantial rights.' *Home Ins. Co. v. Morse,* 20 Wall. 445, 451, 22 L. Ed. 365."

These statements imply that the right to labor with one's own hands when one will and as he will, the right to follow a chosen occupation or business, the right to earn one's own living, and the right to contract are so sacred, so valuable, so important to the individual, that no one may be coerced into giving them up, and when, as here, the means of coercing their surrender results in irreparable injury to the individual, the coercion should upon established principles of equity be enjoined. We are not here concerned with licensing restrictions or the like imposed under the police power for the protection of the public. We need only consider the facts of the instant case to perceive the denial and deprivation of liberty of the plaintiff and I perceive no "due process" by which the result is produced. The plaintiff is a man of family with no means of support except his labor. He is making a living for himself and family by laboring as a tile layer and contracting for small jobs of tile laying to provide opportunity for so laboring. He employs "helpers" on occasion, and occasionally employs "journeymen" tile layers to help him.

He is willing to employ none but members of the defendant labor union to aid him. He is willing to join the defendant union if it will receive him. He will pay the union scale of wages and conform to union hours. The only provision of the proposed contract to which he will not accede is the one denying him the right to labor with his own hands and tools upon the jobs he contracts to perform. He has not sufficient capital to enable him to take any but small jobs. Such jobs as he can handle will yield no profit unless he works upon them himself. He cannot make a living at laying tile as a journeyman without membership in the defendant union, and that is denied him because he has not served three years as apprentice to a journeyman tile layer, and without such membership he cannot procure sufficient employment as a journeyman. To picket his jobs will injure his business as a contractor and reduce his earnings below sufficiency for support of himself and family. Destruction of plaintiff's business through picketing is the object of the defendants and is likely to be attained if the picketing be continued, with resulting liability imposed upon the public for the support of himself and family, with resulting loss to the public of the benefit of his services as a tile layer, denial to the public of the benefit of his competition and, as it is the expressed purpose of the defendants to apply the restriction that it would place upon the plaintiff to all journeymen tile layers who shall aspire to become contractors, with resulting imposition upon the public of a monopoly of the tile-laying business in the hands of members of the defendant union. Business in contracting for such work as tile laying ordinarily begins with small beginnings, and if successful gradually extends to more considerable proportions. The plaintiff's road to success in such business is blocked, and the entry into such business is blocked to every worker, by the requirement of the defendants to which plaintiff objects. The requirement that no contractor shall work with his own hands and his own tools

upon a job would foreclose every worker, union as well as nonunion, from entering the contracting business unless he has or is able to procure capital otherwise not necessary for entry into and prosecution of the business to success. I cannot believe that such result is made lawful by the claim that it is nothing but economic pressure applied to the furtherance of the cause of workers as a whole or of that class of workers belonging to labor unions. The view here expressed of right to an injunction under the situation here involved has the support of the only courts that have ever passed on situations closely similar. *Roraback v. Motion Picture Machine Operators' Union,* 140 Minn. 481, 168 N. W. 766, 169 N. W. 529; *Hughes v. Motion Picture Machine Operators,* 282 Mo. 304, 221 S. W. 94; *Wall Paper Co. v. Local Union,* 87 W. Va. 631, 105 S. W. 911; 16 A. L. R. 222. The practice upheld by the court is un-American, oppressive, and intolerable. It is contrary to the concept that I have always had of the fundamental and inalienable rights of the individual citizen secured to him by the constitution of the United States. I cannot see that concept held for naught by this court without protest. And I will not yield that concept until it is declared erroneous by the final arbiter of that constitution. My concept of the inherent rights of man under the constitution may be merely an ideal that I may eventually have to give up, but I am still strong in my faith in it; and I will ever cherish it unless it shall be destroyed by the ultimate authority, the supreme court of the United States.

The defendants claim that absence of due process in their depriving the plaintiff of his property and his liberty is avoided by the provision of the code declaring peaceful picketing lawful and because, as they say, the plaintiff is free to work with his hands and tools upon his jobs if he wants to. As to the latter, the plaintiff is no more free so to work in the face of the threat of destruction of his business and deprivation of his means of livelihood by continued and

incessant picketing than he would be in the face of a threat to "beat him up" every time he took a contract for tiling. In the latter case, he could make his contract and take his beating, if he wanted to, but it is quite apparent that he would not want to, and would refrain from subjecting himself to the threatened beating. A labor union may not use its power to such ends and with such effect. As said in *Gompers v. Bucks Stove & Range Co.* 221 U. S. 418, 31 Sup. Ct. 492, 497, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874:

"The law, therefore, recognizes the right of workingmen to unite and to invite others to join their ranks, thereby making available the strength, influence and power that come from such association. By virtue of this right powerful labor unions have been organized.

"But the very fact that it is lawful to form these bodies, with multitudes of members, means that they have thereby acquired a vast power, in the presence of which the individual may be helpless. This power, when unlawfully used against one, cannot be met, except by his purchasing peace at the cost of submitting to terms which involve the sacrifice of rights protected by the constitution; or by standing on such rights and appealing to the preventive powers of a court of equity. When such appeal is made it is the duty of government to protect the one against the many as well as the many against the one."

As to the peaceful picketing declared lawful by the code, whether or not it may be declared lawful in furtherance of a strike of employees, it passes the bounds of reasonableness to say it may be used to coerce one into refraining from working with his hands and the tools of his trade or following his chosen calling or making contracts in the prosecution of his business. No court has ever yet squarely held that picketing, peaceful or otherwise, is lawful except in aid of a strike. The case of *Exchange Bakery & Restaurant, Inc., v. Rifkin,* 245 N. Y. 260, 157 N. E. 130, 132, does hold, in effect, that peaceful picketing in aid of a strike is lawful. Other cases

so hold or imply. In the *Rifkin Case, supra,* only three employees struck. The rest stuck to their jobs. It is stated in effect in the opinion in the *American Furniture Co. Case, supra,* that, if as held in the *Rifkin Case* peaceful picketing by a union may be enjoined when only three employees are striking, it may be where no employees are striking and where there is no strike at all. This does not follow. In *American Steel Foundries v. Tri-City Central Trades Council,* 257 U. S. 184, 42 Sup. Ct. 72, a labor union was prosecuting a strike. Only two employees were shown to have participated in picketing in aid of it. The judgment enjoined all picketing by any of the defendants but the injunction, while upheld as to the other defendants, was so modified as to these two as to permit them to use "persuasion" to induce employees to quit work. The *Tri-City Case* was under the Clayton act, but it plainly declares that striking employees may have rights that nonstrikers do not have, and that an injunction may issue against the latter that will not issue against the former.

That peaceful picketing is not made lawful in every controversy growing out of a labor dispute by the declaration of the code may, I think, be clearly shown by a few hypothetical cases. Suppose there is a strike of WPA workers and they come to the capitol city in a great horde. They demand of the state administrator that he increase their wages. This he is powerless to do. They make like demand upon the governor of the state, and he also is powerless to meet their demand. They then post pickets to patrol the sidewalk in front of the state administrator's house bearing placards denouncing the administrator as unfair to labor, although "fairly stating" "the essential facts of the labor dispute" and not bearing any misstatement of fact conformable in all respects to the placarding upheld by the judgment of the court herein. The annoyance is so offensive to the state administrator and his family that he leaves his house with his family and lives in a hotel until the picketing subsides. Strikers post

pickets to patrol the public halls of the capitol in front of the entrance to the governor's offices bearing placards containing like denunciation of the governor and like statements of the "essential facts of the dispute" without falsifying. Is this picketing lawful? Suppose the case of Mrs. Blank. She has a family of several small children. She requires help in the care of her children and the performance of her household duties. The family income cannot spare over $3 per week to devote to that purpose. A maid out of employment is willing and desires to render the required service for the proffered wage and accepts the employment. A labor union, the members or officers of which consider that $3 per week is not a sufficient wage, maintain pickets on the sidewalk in front of her home bearing placards calling attention to the fact that Mrs. Blank pays her maid only $3 per week and stating that she is "unfair to labor." Must Mrs. Blank and her husband submit to the annoyance and nuisance of this "peaceful picketing" week in and week out because a statute declares that peaceful picketing in labor disputes is lawful? These cases are not stated as presenting exact parallels to the instant case. They are stated as illustrating that all picketing is not lawful, although it falls within the statutory declaration. Whether it is lawful or not depends upon the instant situation involved.

"The legislative power of a state can only be exerted in subordination to the fundamental principles of right and justice which the guaranty of due process in the XIVth Amendment is intended to preserve." *Truax Case, supra.*

The defendants claim and base their claim of the validity of the defendants' acts upon the proposition that their demand is as stated in their briefs "a reasonably just one." It is, of course, fundamental that statutory provisions restricting the liberty and property of the citizen must be reasonable or they violate due process. They must bear a relation to the health, safety, good order, or welfare of the public. The statute declaring peaceful picketing lawful bears no relation

to the public health. It bears no relation to the safety or good order of the public. So far as it has any effect on safety and good order the tendency is to disserve rather than serve them. And as I understand the welfare requirement, the welfare served must be that of the public, not that of a particular class of the public to the detriment of another class of the public. To rule that peaceful picketing in every case is lawful would serve the interest of organized labor to the detriment of unorganized labor and not induce to the welfare of the public as a whole. If this may be done, a legislature could enact any statute whatsoever affecting the rights of the citizen under the claim that it serves the public welfare and it would be immune from attack as withholding due process. To justify statutes affecting one class of society to the detriment of another class, if there can be any such justification, the advantage to the one class must at least so overbalance the disadvantages to the other that the welfare of the public as a whole is thereby advanced. The instant statute, if applied to the situation here involved, in my opinion does not meet these tests.

The acts of the defendants here involved being in my opinion unlawful, I see no need to discuss the question of the validity or invalidity of the injunctional provisions of the labor code.

I am authorized to state that Mr. Justice NELSON concurs in this opinion.

The following memorandum was filed September 15, 1936:

FAIRCHILD, J. (*on motion for rehearing*). Upon the motion for rehearing, the plaintiff contends that to enforce the decision of this court would deprive him of the right to make his own livelihood with his own hands and tools, and that even if a labor dispute, as defined by secs. 268.18 to 268.29, Stats. 1933, now secs. 103.51 to 103.63, Stats. 1935, exists,

that sec. 103.56 and 103.62, Stats. 1935, are unconstitutional and invalid as violating both the Wisconsin and federal constitutions. These contentions were urged in the original brief of plaintiff, were fully considered by this court in the decision of this case, and held to be without merit.· These claims were not more particularly treated in the opinion deciding this case, because, as disclosed in the opinion, the views of this court upon the constitutional questions raised were decided adversely to the contentions of plaintiff in the case of *American Furn. Co. v. I. B. of T. C. & H. of A.,* etc., *ante,* p. 338, 268 N. W. 250.

*By the Court.*—Motion for rehearing denied with $25 costs.