MURRAY MILLER and Others, Copartners, Doing Business under the Firm Name and Style of MILLER FISH MARKETS, Plaintiffs, *v.* FISHWORKERS UNION OF GREATER NEW YORK, LOCAL 635, and Others, Defendants.

Supreme Court, Special Term, New York County, March 29, 1939.

*Goodstein & Moed,* for the plaintiffs.

*Boudin, Cohen & Glickstein [Hyman N. Glickstein* and *Irving R. Feinberg* of counsel], for the defendants.

CoTILLO, J.   The facts in this case establish the operation of a retail fish store where the workers are two brothers and one sister, all of whom are themselves the sole owners of the business being picketed.   The amount of business conducted within the plaintiffs' store premises scarcely suffices to keep these three co-owners busy.   For this reason the one worker formerly employed by the plaintiff copartnership had been released on the 3d day of March, 1939.   The released employee is a member of defendant Fishworkers Union of Greater New York, Local 635.   Between the coplaintiff partnership and such defendant there had existed a one year's contract affecting wages and working conditions.   This contract had expired on the 28th day of February, 1939.   The discharged employee had been released at the expiration of the contract date, so that when the time came for its renewal the sole workers in the plaintiffs' establishment were the co-owners themselves.   The co-owners had requested permission to be released from the clause in the contract compelling them to retain their one employee prior to the contract's expiration date, due to insufficient business, but this permission the defendant local had refused.   The defendant started picketing three days after the discharge of the one employee.

It is the contention of the defendant local that the discharge by the copartners of their one workingman is part of a conspiracy or plan entered into by an association of employers to restrict or limit the defendant local in its union functions on behalf of fish workers in general.   The plaintiffs deny that they are members of any employer association; they deny that they are part of any such or similar group; they deny that they have any interest, direct or indirect, with other employers in the same line of business; they contend that their conduct is isolated from all other cases similarly situated; they further deny that they have entered into any plan or conspiracy with other employers and contend that the situation presented to this court refers exclusively to their own interests and to no other employer group or individual.   On this point the state-

ments by defendant's local are inconclusive and totally inadequate to establish any such alleged conspiracy or plot.

We have, therefore, the condition where three partners own a small retail fish business; said partners all being members of one family, two brothers and one sister. During the year period, while a contract existed between the plaintiff copartnership and the defendant union, they had in their employ one sole employee, X, who would have been discharged before the expiration date of the contract but who was retained for reasons of amity. At the termination of the contract the worker was informed his services were no longer wanted, because of insufficient business.

On the basis of this factual business condition the plaintiffs allege the lack of any necessity for entering into any written contract or agreement, inasmuch as they have no employees whose interests the union might protect. The response of the union to this assertion is that they are not prepared to contest the necessity for retaining any existing employees, but assert that they must have a contract so that if, *in the future, the business of the plaintiffs prospers and added help is needed, there must be already in existence an instrumentality of a documentary character by which such future employment relationships are to be guided.*

On the basis of this last contention the defendant local is picketing the plaintiffs and bases its right to picket upon the legal contention that peaceful picketing is lawful under any and every condition; that it is merely a form of publicity; that it is a right inherent with labor in the nature of modern industrial enterprise, and that when conducted lawfully picketing carries constitutional guaranties so that it cannot ever be enjoined. This arises from the fact, so the defendant local asserts, that picketing is permissible, although no strike is in progress; that what is involved here are merely economic issues leaving nothing of a juristic character for the courts to adjudicate. With this brief summary of facts, what are the legal questions, if any, facing this court?

Once again this court is confronted with a commonly-recurring type of litigation. What is referred to here is the type of labor dispute in which social and economic problems mingle and may perhaps even overshadow strictly legal questions. This is readily seen, for example, in the very nature of the contention offered by the defendant local that they are conducting their picketing, not for the purpose of remedying an *existing* employer-employee situation, but that their current activity is designed to prepare for a *possible future relationship* concerning which they wish to be prepared. Is not this saying in effect that, whereas there is no specific complaint which they *presently have* against these co-owners,

nevertheless, having once had a contract freezing said union's relationship to this particular employer's business, the union regards it as a setback in its general, social and economic welfare not to be able to maintain in form, at least, the same semblance of contractual protection for its workers? Mingled with this last statement is the fear that any diminution of the union's contractual rights spells for the defendant a rescession of union powers.

Paragraph (c) of subdivision 10 of section 876-a of the Civil Practice Act defines a labor dispute as " any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment or concerning employment relations, or any other controversy arising out of the respective interests of employer and employee, regardless of whether or not the disputants stand in the relation of employer and employee."

In *Thompson* v. *Boekhout* (273 N. Y. 390) plaintiff's complaint there alleged him to be in the business of operating a moving picture theatre; that for some time prior to January 28, 1936, he had employed one of the defendant's members as the projectionist in such theatre; and that thereafter the plaintiff, as a duly licensed projectionist, had taken over the duties formerly performed by his employee; that thereupon the defendants had conspired to intimidate the plaintiff so that he would re-employ the defendant members of the union under a contract prepared by the defendant union and had stationed pickets at the plaintiff theatre; that no strike had ever been called by the plaintiffs' employees.

The Court of Appeals' finding was that the legislative definition of " labor dispute " made clear that its purpose was " to subject injunctions issued in disputes involving or growing out of the relation of employer and employee to special regulations deemed appropriate to the nature of such disputes. *Where the owner of a small business seeks to void labor disputes as defined in the statute by running his business without any employees, any attempt to induce or coerce him to hire an employee or employees upon terms and conditions satisfactory to persons associated in such attempted inducement or coercion is not a labor dispute within the letter or spirit of the statutory definition.*"

In the case at bar it is not sought to coerce the plaintiffs to hire any worker or workers upon terms and conditions satisfactory to the defendant local. It is to be noted that satisfactory terms and labor conditions, whatever they be, *relate to the future entirely. For the present there is no employer-employee relationship existing at all.* What the union is after here is an attempt to take time

by the forelock, anticipating a growth of prosperity and the return of good times, an assumed increase in the required number of workers and not any increase in the number of co-owners, though theoretically this is possible. *In short, the union is searching after something at present without substance, but predicated solely on future anticipations.* It is difficult, under such facts, to see how it is possible to regard the issues herein described as involving a labor dispute.

Concerning the other issue of the right to picket in such a case as this, whether or not a strike exists, there is raised thereby another interesting question. On this point defendant has offered the theory allegedly underlying the law expressed in two recent United States Supreme Court decisions. One is the case of *Senn* v. *Tile Layers Protective Union* (301 U. S. 468) and the other is the *New Negro Alliance* v. *Sanitary Grocery Co.* (303 id. 552). Both these cases are distinguished.

In the *Senn* case Judge Brandeis. (four judges dissenting) clothed picketing with a constitutional guaranty regarding it the equivalent of free speech. In the *New Negro Alliance* case Judge Roberts, also by a divided court, held that, under certain conditions, a labor dispute is involved whether or not the approximate relationship of employer and employee exists. The *Senn* case was an interpretation of a Wisconsin statute and the *New Negro Alliance* case represented an interpretation of article 13 of the Norris-LaGuardia Act (U. S. Code, tit. 29, § 113) and some of its subdivisions.

The wording of the New York State Labor Relations Act approximates the wording of the Federal Labor Act, but not in every particular. Subdivision 8 of section 701 of the Labor Law (New York State Labor Relations Act), controlling in this case, is different from its corresponding section in the Federal statute. The latter section states: " The term ' labor dispute ' includes any controversy concerning terms, tenure or conditions of employment or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." (National Labor Relations Act, § 2, subd. 9; U. S. Code, tit. 29, § 152, subd. 9.)

The distinction between the instant case and the *Senn* case must be patently obvious in that Senn *had* employees; that an " employer-employee " relationship definitely existed. Consequently, a labor dispute *was* involved. But the chief substance for us here in the *Senn* case did not lie in whether or no a labor

dispute existed. It lies in the clarification by our highest court that picketing has the protection of the Federal Constitution by reason of its being regarded simply as another aspect of free speech; that picketing is a means of publicity; that as such it can be regulated under the police powers of the State, just as the use of the public streets and local streams may be regulated under the police power of the State. But in passing on such exercise of legislative power the State courts are controlling if no Federal question is involved. In the *New Negro Alliance* case a different condition arose. In that case what the court passed upon were clearly specific provisions of the Norris-LaGuardia Act, a Federal statute, where the words used are different than the guidance afforded this court through our so-called Little Wagner Act. In the New York State Labor Relations Act a " labor dispute " is defined as follows: " The term ' labor dispute ' includes, but is not restricted to, any controversy between employers and employees or their representatives as defined in this section concerning terms, tenure or conditions of employment or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to negotiate, fix, maintain or change terms or conditions of employment, or concerning the violation of any of the rights granted or affirmed by this article, regardless of whether the disputants stand in the proximate relation of employer and employee." (Labor Law, § 701, subd. 8.)

This section, under the instant set of facts, has been specifically passed upon by the Court of Appeals in this State. (See *Thompson* case, *supra*.)

With what motives is picketing being conducted by this union? Is it not coercive? And, if so, would not such conduct be illegal? There being no labor dispute, to permit picketing is to condone an illegal purpose.

In the instant case we have an illustration of picketing being conducted, not to enforce higher wages, better working conditions, shorter hours; but, instead, to provide a cushion against a future exigency, which exigency has no existence and is not yet in being; which, in fact, may never arise, and which is, indeed, highly speculative so far as the time of actual occurrence is concerned.

Thus the union is agitating for a right, the basis of which has no present validity, regardless of what the future may bring. If this court authorized such picketing the defendant local would be able to compel every business man under such theory to sign a contract to meet a future exigency and thus we find a situation where no business could function unless, after picketing once starts, *regardless of present needs*, each picketed employer protects himself with a

contract in anticipation of future hiring. *The principles governing labor relations between the plaintiffs and any new proposed workers cannot be reasonably apprehended with any specificity. Too many variables enter. The contrat scought here is not between the plaintiffs and a worker offering himself, but between the plaintiffs and the union in alleged support of a phantom number of workers and a phantom increase in business. It cannot be said that without such a contract the workers would lose employment, because the absence of any contract with the union is not determinative of such issue. Only an increase in business could decide that.*

Under the facts presented before me in this case, there being no labor dispute, the application for an injunction will be granted. Settle order providing for filing an undertaking in the sum of $250.