EVANS ET AL., APPELLANTS, *v.* RETAIL CLERKS UNION No. 977 ET AL., APPELLEES.

(Decided August 20, 1940.)

*Mr. Kermit C. Sitterly,* for appellants.
*Mr. John E. Silbaugh* and *Mr. George W. Coen,* for appellees.

SHERICK, P. J. This is an appeal by plaintiffs on questions of law and fact. The suit is submitted on the record made in the trial court. The relief sought is an injunction, restraining defendants from picketing plaintiffs' place of business. The essential facts gleaned from the pleadings and the record are as follows:

Plaintiffs are partners conducting a grocery store, a restaurant and gasoline filling station in a unionized residence neighborhood in the city of Lancaster. These businesses are conjunctively operated, but are so located that they can be conducted independent of each other with little or no inconvenience. The plaintiffs, a father and two sons, have no employees. In 1938, for a period of five months, the partnership, through one of its members, was affiliated with the defendant union. During this period a union card was displayed in its window. Thereafter the partnership discon-

tinued compliance with the grocery closing hours generally observed in the city, and insisted upon by the defendant union. This noncompliance resulted in withdrawal of the union card and subsequent attempts on the part of the union to secure conformity with grocery closing hours by plaintiffs. These negotiations having failed in their purpose, the union began picketing on June 7, 1940. Three days thereafter, this suit was instituted. It is observed that it is not contended that the controversy and picketing in any way affects plaintiffs' two other commercial enterprises.

It is disclosed by the evidence, and conceded in open court, that the picketing has been accomplished with no act of violence of any character; and that it has been peaceable, save and except in that the act of so doing, and the banners carried, have intimidated and coerced many prospective union customers and sympathizers. It is urged in part that the placards do not speak the truth. We therefore quote their substance. The first, which was displayed for a few weeks, recited that "this food dept. unfair to Org. Labor." The one now carried reads: "The food dept. refuses to conform to the opening and closing program observed by the majority of the food merchants of Lancaster, Ohio. Retail Clerk's Union Local 977 asks your help by refusing this food dept. your patronage." We perceive no merit in this claim, for we find the partner, Charles Evans, on page 14 of the record, testifying that the banner now in use contains "nothing untruthful."

The picketing being peaceful and the display card speaking the truth, the contention resolves itself into two seemingly simple questions: First, are the acts of the defendant done lawfully to accomplish a lawful purpose? Second, is there a legitimate trade dispute between the parties? Their simplicity, however, turns to complexity when the questions are to be answered in the harmonizing of equally solemn constitutional rights. Our task is made most difficult because of the

fact that the two highest tribunals to which we owe deference have reached diverse conclusions. The two queries are so closely related that they must of necessity be considered simultaneously. We shall content ourselves with consideration of but these two authorities.

Plaintiffs maintain that inasmuch as the partnership is not unionized and has no employees, union or otherwise, there can exist no legitimate trade dispute; and until such a dispute is shown to exist, peaceful picketing is unlawful, because it deprives them of their constitutional right to possess and enjoy their property and prosecute their business uninterrupted by the union's interference. To this the union makes answer that it is collectively exercising its constitutional guaranty of freedom of speech, which is being done truthfully and peaceably; and that in so doing it has done no act prohibited by municipal ordinance or legislative act. It denies the plaintiffs' claim of invaded rights and asserts that their refusal to respect closing hours, irrespective of whether a trade dispute exists as defined by the state Supreme Court, is harmful to the interests of organized labor and that its sole purpose is to acquaint the public with the facts and persuade it by publicity to patronize food stores which observe union hours.

The plaintiffs rely upon the recent case of *Crosby* v. *Rath,* 136 Ohio St., 352, 25 N. E. (2d), 934. The facts of this case disclose repeated acts of violence. It is, therefore, not a case of peaceful picketing, but an attempt by unlawful means to accomplish an improper purpose, to wit, to force the employer to discharge her employees unless they joined the defendants' union. The cause, however, is decided upon the sole ground that there was no dispute between the employer and her employees.

Inferentially it is held that there can be no lawful

picketing unless a trade dispute actually exists between employer and employees.

The facts of that case are unlike those in the present suit. Here is a situation where the employers are the only employees. The picketing is peaceful and the published statements are truthful. In the *Crosby case, supra,* it was not contended that a dispute existed. Here it is urged that a dispute exists in the broken agreement to maintain closing hours, which provoked withdrawal of the union's card and the union's subsequent action. The purpose sought to be attained is not to compel plaintiffs to join defendants' union but only to secure uniform closing hours acquiesced in by plaintiffs for a period of five months. It is our judgment that the termination of the closing agreement presents a legitimate trade dispute. We note from the records that if plaintiffs resume closing their grocery business in accordance with the existing general schedule the pickets will be promptly withdrawn.

The authority upon which defendants rely is that of *Senn* v. *Tile Layers Protective Union,* 301 U. S., 468, 81 L. Ed., 1229, 57 S. Ct., 857. Mr. Justice Brandeis commences his opinion in this manner:

"This case presents the question whether the provisions of the Wisconsin Labor Code which authorize giving publicity to labor disputes, declare peaceful picketing and patrolling lawful and prohibit granting of an injunction against such conduct, violate, as here construed and applied, the due process clause or equal protection clause of the Fourteenth Amendment."

Senn was engaged in the business of tile laying. He had several employees. He worked with his hands. Senn could not have been admitted to membership in the union as a tile setter because he had never served an apprenticeship. "Neither Senn, nor any of his employees, was at the time this suit was begun a member of either union, and neither had any contractual relations with them." He sought "an injunction to re-

strain picketing, and particularly 'publishing, stating or proclaiming that the plaintiff is unfair to organized labor or to the defendant unions.' " Senn contended that one section of the defendant unions' rules which prescribed that the owner of a tile laying business might not work with his hands unless he was a journeyman member of a union, although approved of by statute, took from him his liberty and property and denied him equal protection of the law. It was also urged that the facts did not establish a labor dispute.

Plaintiffs assert that this case is not in point. It is said that Ohio has no such statutes. Justice Brandeis makes answer in the *Senn case, supra,* and concludes:

"Clearly the means which the statute authorizes— picketing and publicity—are not prohibited by the Fourteenth Amendment. Members of a union might, without special statutory authorization by a state, make known the facts of a labor dispute, for freedom of speech is guaranteed by the federal Constitution."

From this holding it is clear that if the means employed and ends sought are not forbidden by the federal Constitution and the picketing is peaceful, the publication truthful, and unaccompanied by any unlawful act, statutory authority is not a prerequisite; and unions may act to protect the interests of their members against the harmful effect of conduct like that of Senn and these plaintiffs. Justice Brandeis makes the further observation. On page 481, he says:

"Because his (Senn's) action was harmful, the fact that none of Senn's employees was a union member, or sought the union's aid, is immaterial. * * *

"There is nothing in the federal Constitution which forbids unions from competing with nonunion concerns for customers by means of picketing as freely as one merchant competes with another by means of advertisements in the press, by circulars, or by his window display. Each member of the unions, as well as Senn, has the right to strive to earn his living. Senn

seeks to do so through exercise of his individual skill and planning. The union members seek to do so through combination * * *. To win the patronage of the public each may strive by legal means."

When Justice Butler's dissenting opinion is examined it will be perceived that it is predicated upon two grounds. He holds that the object sought to be attained by the unions, that is to deprive Senn of his right to work with his hands, is unlawful. On page 489, we note the following:

"Admittedly, it is to compel plaintiff to quit work as helper or tile layer. *Their purpose is not to establish on his jobs better wages, hours, or conditions.*" (Italics ours.)

The italicized portion leads one to believe that even the dissenting justices perceived no fault if only hours or conditions were sought to be bettered.

The second ground of dissent was based on the misrepresentation of the facts on their signs. In the presented controversy it is admitted that the banner in use at trial and now in use does not state an untruth. These observations on the reasons for the dissenting opinion lead us to conclude that had the facts of the *Senn case, supra,* appeared as in this suit, there might have been no dissent.

Inasmuch as the questions presented involve rights guaranteed under the federal Constitution, we deem it altogether fitting and proper that this court follow the mandate of the federal Supreme Court whose pronouncements on federal questions are the last and final word in such matters. The prayer of the plaintiffs' petition is denied and the petition dismissed at plaintiffs' costs. The same orders are entered here as were made by the trial court.

*Decree for appellees.*

LEMERT and MONTGOMERY, JJ., concur.