Zimmerman, J.,
dissenting. As I view the matter, the vital question in this case, under the facts presented, is relatively simple. That question is, where no dispute exists between an employer and his nonunion employees, may members of a labor union who are directly interested picket and banner the employer’s premises in a quiet and orderly manner to induce unionization by publicizing the status of the employer’s establishment after negotiations for unionization have failed?
There is neither a constitutional provision nor any statutory law in Ohio which prohibits such activities, and I can not agree with my associates that “the public policy, of Ohio, as determined by its courts, regards picketing against an employer as unlawful where there is no dispute between the employer and his employees and where the picketing is conducted by persons who were never employed by that employer * *
In the case of Crosby v. Rath, 136 Ohio St., 352, 25 N. E. (2d), 934, relied on in the majority opinion as establishing such public policy, violence and intimidation accompanied the picketing. And the case of W. E. Anderson Sons Co. v. Local Union No. 311, 156 Ohio St., 541, 104 N. E. (2d), 22, was decided mainly on the ground that the picketing there constituted an unlawful “secondary boycott.”
*226 It seems to me that the question stated above requires an affirmative answer under the decision of the Supreme Court of the United States in American Federation of Labor v. Swing, 312 U. S., 321, 85 L. Ed., 855, 61 S. Ct., 568.
There, as stated in the opinion, the precise issue was:
“Is the constitutional guaranty of freedom of discussion infringed by the common-law policy of a state forbidding resort to peaceful persuasion through picketing merely because there is no immediate employer-employee dispute?”
The court answered that question in the affirmative and said in the course of the opinion:
“A state can not exclude workingmen from peacefully exercising the right of free communication by drawing the circle of economic competition between employers and workers so small as to contain only an employer and those directly employed by him. The interdependence of economic interest of all engaged in the same industry has become a commonplace. * * * The right of free communication can not therefore be mutilated by denying it to workers, in a dispute with an employer, even though they are not in his employ. Communication by such employees of the facts of a dispute, deemed by them to be relevant to their interests, can no more be barred because of concern for the economic interests against which they are seeking to enlist public opinion than could the utterance protected in Thornhill’s case [Thornhill v. Alabama, 310 U. S., 88, 84 L. Ed., 1093, 60 S. Ct., 736]. ‘Members of a union might, without special statutory authorization by a state, make known the facts of a labor dispute, for freedom of speech is guaranteed by the federal Constitution.’ Senn v. Tile Layers Protective Union, 301 U. S., 468, 478 [81 L. Ed., 1229, 1236, 57 S. Ct., 857].”
The Swing case has never been expressly overruled, nor do I find in later cases that the principle announced in that case has been abandoned or modified in any essential respect.
In my view, the majority opinion proceeds on an erroneous basis and reaches an erroneous conclusion, with the result that appellants are denied the exercise of a constitutional right.
I would, therefore, reverse the judgment of the Court of *227 Appeals and remand the cause to that court with instructions to dissolve the injunction and enter judgment for the appellants.