ARNAULT, D. B. A. DUTCH DOOR, PLAINTIFFS, v. BRYANT ET, DEFENDANTS.

Common Pleas Court, Hamilton County.

No. A-182065.   Decided May 12, 1961.

*Mr. Howard T. Cook*, for plaintiffs.
*Mr. Jonas B. Katz*, for defendants.

BADER, J.   The plaintiffs in this case are engaged in operating a tavern in the City of Cincinnati known as the "Dutch Door."   Previously the employees of this establishment which was known as the 11th Frame were members of the Hotel and Restaurant Employees International Union.   The Union contract was signed by Corbin Deer, the previous owner, and became effective July 11, 1956.

A contract of sale between the present owners and the Estate of Corbin Deed, deceased, was entered into on the 23rd day of November, 1960 and possession was transferred on February 2nd, 1961.

There is some testimony of E. J. Moorman, a representative of the Union and Edward Arnault, one of the proprietors, that they discussed the advantages of a Union contract after February 2nd, 1961.   Subsequent to this discussion on April 14th a member of the Union at the time was discharged and she testified that no reason was given for her discharge.   On the other hand the proprietors testified she was discharged because her work was not satisfactory and for some other reasons.

When the plaintiffs took possession there were four union employees, one of whom has withdrawn from the union, two were discharged and one remains as a member of the union.

Shortly after the discharge of the union employee on April 14th, a picket representing the union was placed on the sidewalk in front of plaintiff's establishment carrying a banner in front and rear bearing the words "On Strike."   On motion of the plaintiff the Court issued a restraining order preventing the defendants from carrying a banner marked "On Strike" when in fact there was no strike.

The union then changed its banner to read "This establishment does not meet union working conditions."

This matter is here on the motion of the defendant for a temporary restraining order and permanent injunction as well as on the demurrer of defendants to plaintiff's petition.

The Court will dispose of the demurrer first and after

perusing the petition and reading the law the Court is of the opinion that the demurrer is not well taken and should be overruled.

Inasmuch as it required two days to try this case and similar evidence would be introduced if the case was tried on its merits, the Court will consider this case as being tried on its merits and enter final judgment.

In the case at bar it is the claim of the Union that their only purpose in picketing the establishment in question is to better working conditions and not to coerce the non-union employees or the proprietors in joining the union. Counsel for the union in open court stated that if these employers would "meet union working conditions" the picket would be withdrawn and the employees would not be compelled to join the Union.

There is testimony that the employers do not supply a Health and Welfare fund, there is no vacation period, they are not supplied with uniforms and meals, and there is no holiday provisions. There is also some testimony that the hourly wage was reduced from $1.25 per hour to $1.00 per hour. All of these, the testimony indicates, are the things offered by the Union conditions.

It must be remembered that this was a union establishment before the present employers took possession and all of the employees were either discharged or their wages reduced.

It is true also that the only remaining union employee testified she had no grievance with her employers. The Court must assume that there is no grievance with the employers except that the conditions are not the same or equal to the standard of a union shop and it is attempting to accomplish this end.

The *Chucales* v. *Royalty* case recorded in 164 Ohio St., 214, is admitted by both counsel for the plaintiffs and counsel for the defendants to be the latest word on the question of picketing. It seems to the Court that there is a difference between the case at bar and the *Chucales case* in that it was tried on stipulated facts. In the latter case it was stipulated among other things—

1. No employees of the plaintiff at any time were members of the Union.

2. That the pickets at no time were employees of the plaintiff or represented the employees.

3. That the picket was a member at all times of Local No. 429.

These facts differ from the facts in the case at bar in one point only in that all of the employees of the establishment under the previous ownership were members of the union and it was a union tavern and also in that all of the union employees were cut in hourly pay and discharged with the exception of one waitress who is still a member of the union in good standing but who was also cut in hourly pay.

It is true that the pickets were never employed by the owners of the establishment but they are members of the union and represent the union who in turn represents at least one person still employed by the owners.

It is contended by defendants that the advantages, standards, or conditions which members of the Union enjoy as set forth above are not supplied by the employers and that the employers in the instant case are enjoying competitive and economic advantages over others engaged in a like business in the neighborhood and elsewhere.

There is no evidence of violence. There is only evidence of peaceful, quiet and orderly picketing in effort to cause the plaintiffs to meet the working standards of the union employee. The court finds no coercion. Certainly there is no law which would prevent any person, whether he be a member of the union or not, from displaying a banner and expressing his opinion and to communicate his attitude to the public in a peaceful effort of persuasion if the same displayed the truth.

The only persons who would not enter plaintiffs establishment would be persons who would not cross the picket line.

It was said in the case of *American Federation of Labor* v. *Swing*, 312 U. S., 321 at 325:

"Such a ban of free communication is inconsistent with the guarantee of freedom of speech. That a state has ample power to regulate the local problems thrown up by modern industry and to preserve the peace is axiomatic. But not even these essential powers are unfettered by the requirements of the Bill of Rights. The scope of the Fourteenth Amendment is

not confined by the notion of a particular state regarding the wise limits of an injunction in an industrial dispute, whether those limits be defined by statute or by the judicial organ of the state. A state cannot exclude workingmen from peacefully exercising the right of free communication by drawing the circle of economic competition between employers and workers so small as to contain only an employer and those directly employed by him. The interdependence of economic interest of all engaged in the same industry has become a commonplace. *American Steel Foundries* v. *Tri-City Council*, 257 U. S., 184, 209. The right of free communication cannot therefore be mutilated by denying it to workers, in a dispute with an employer, even though they are not in his employ. Communication by such employees of the facts of a dispute, deemed by them to be relevant to their interests, can no more be barred because of concern for the economic interests against which they are seeking to enlist public opinion than could the utterance protected in *Thornhill's case*. 'Members of a union might, without special statutory authorization by a State, make known the facts of a labor dispute, for freedom of speech is guaranteed by the Federal Constitution.' *Senn* v. *Tile Layers Union*, 301 U. S., 468, 478.''

The Court is of the opinion that there is a dispute between the union and the employers and that that dispute concerns working conditions and competitive advantages over others by reason thereof. The Court is also of the opinion that the picketing carried on in the instant case is not unlawful. The Court will grant the prayer in part. The Court is of the opinion that the picketing should be limited to one person at a time at all times, and that the picketing should be done in a quiet and peaceful manner and without interference with the customers or representatives of business entering or leaving the premises in any manner. An injunction will be granted in those respects.

Inasmuch as the Court is of the opinion that the picketing in this case is not unlawful the prayer for the restraining order and injunction against picketing will be denied.

Counsel are requested to submit an entry at an early date in accordance with the Court's findings.