By the Court.
 

 The question as to the validity of the three-month, written, renewable employment contracts here involved requires no discussion. Both the Court of Common Pleas and the Court of Appeals held them valid, and a study of the record discloses nothing tending to support the contention of the defendants to the contrary.
 

 The controlling question in the case is whether the evidence discloses the existence of a legitimate trade dispute. However, this difficulty is simplified by the fact that both the plaintiff and the defendants rely upon the decision of this court in the .case of
 
 La France Electrical Const. & Supply Co.
 
 v.
 
 International Brotherhood of Electrical Workers,
 
 108 Ohio St., 61, 140 N. E., 899, subsequently cited with approval in the case of
 
 State, ex rel. United District Heating, Inc.,
 
 v.
 
 State Office Building Commission,
 
 125 Ohio St., 301, 181 N. E., 129. In the
 
 La. France case
 
 this court gave careful consideration to the principles of law relating to the subject of trade disputes, and affirmed the decision of the lower courts permitting the picketing of the employer’s plant. But in the opinion it is clearly pointed out that “Upon the record with regard to this point there can be little doubt that a legitimate trade dispute existed in this case, in which former employees of the plaintiff company were seeking to secure the right to work with the company under terms of employment different from those which
 
 *355
 
 their employer was at the time requiring. That being the case, the methods open to use in a legitimate trade dispute were open to strikers here.” Of course, as already indicated in the factual statement, it is not even contended that in the instant case there is any dispute whatsoever between the plaintiff and her employees, as in the
 
 La France case, supra.
 
 On the contrary, the only dispute in the instant case is between the plaintiff and the defendants with whom the plaintiff’s employees have no connection. The thing upon which the defendants are insisting is that the plaintiff discharge her employees unless they become members of one of the defendant unions. There is no reason or convincing authority sustaining the contention of the defendants that they have the right to engage in picketing or boycotting under such circumstances. That this must be the law is clearly indicated by the intolerable and unexplainable predicament in which an employer might well find himself if picketed by two or more hostile unions with each one insisting that the employer discharge his employees unless they become members of that particular union alone.
 

 Finally it should be noted that the instant situation is concededly unaffected by statute. This clearly distinguishes the case from most of the authorities relied upon by the defendants.
 

 Two recent decisions restating the generally accepted rule are to be found in the cases of
 
 Meadowmoor Dairies, Inc.,
 
 v.
 
 Milk Wagon Drivers’ Union,
 
 371 Ill., 377, 21 N. E. (2d), 308, and
 
 Roth
 
 v.
 
 Local Union,
 
 — Ind., —, 24 N. E. (2d), 280. In the former case one paragraph of the syllabus reads in part as follows:
 

 “The right to contract, the right to do business and the right to labor freely and without restraint are all constitutional rights equally sacred, and the privilege of free speech cannot be used to the exclusion of other constitutional rights nor as an excuse for un
 
 *356
 
 lawful activities in interference with another’s business * *
 

 The decree of the Court of Appeals must be re- . versed to the extent that it permits picketing and boycotting. Final judgment is hereby rendered in conformity with the decree of the Court of Common Pleas.'
 

 Judgment reversed in part.
 

 Weygandt, C. J., Williams, Matthias, and Hart, JJ., concur.
 

 Myers, J., concurs in the judgment only.
 

 Day and Zimmerman, JJ., dissent.