### GRIMES & HAUER, INC., Plaintiff, v. POLLOCK et, Defendants.

Common Pleas Court, Cuyahoga County.

No. 645411.   Decided March 19, 1953.

Stanley, Smoyer & Schwartz, Cleveland, for plaintiff.
Smoot & Riemer, Cleveland, for defendant.

(BAUMANN, J, of Sandusky County, sitting by designation.)

**OPINION**

By BAUMANN, J:

Plaintiff is a corporation engaged in the processing of poultry and its sale through company operated retail stores. In the Cleveland area it has seven such outlets with a total of twenty-four employees. Five of the outlets are percentage concessions in Kresge's stores. The defendants are representatives of the local union whose membership includes a very substantial number of the persons employed in the industry. None of plaintiff's employees are or have been members of the union.

The union began active efforts to organize the plaintiff's business about January 1st, 1952. No effort was made to solicit the employees directly. Instead the unions sought to meet with the company officials. They received little encouragement, but finally on March 26th, 1952, the company sales manager and local store manager kept an appointment at the union office. There they conferred with the international representative assigned to the defendant local. They were told of the union's interest in organizing plaintiff's operation. The union proposed to negotiate a contract with the company along the lines then prevalent in the industry. The union suggested that this negotiation should be completed and precede solicitation of members because new members often insisted upon impractical benefits and negotiation after organization might be accompanied by excessive friction. The further suggestion was made that if, as and when the terms of the contract were fixed, the employees should be advised of the accomplished fact and afforded the opportunity to join.

A form of contract was displayed providing for compulsory union membership. Apparently the intention of the company's representative was to listen. They stated nothing more important than that final decision must rest with the home office at Lebanon, Pennsylvania, and requested that a proposed contract be forwarded to that office.

The union wrote the company and by the terms of the letter a proposed contract was transmitted. The company denies the receipt of the enclosure. This letter was neither acknowledged nor answered. What on the surface would appear to be a lack of courtesy is in complete accord with the deliberately conceived company policy. Their persistent inertia negatives any claim that they were endeavoring to influence their employees as to the desirability of union membership. No one for the company ever communicated with the union. No one for the company even intimated a course of action for any employe. They maintained unbroken silence.

The union continued its original course of action. They abstained from any employe contact. From time to time the company was urged to participate in another meeting. Other than this no action was taken until February 6th, 1953, when picketing and bannering were begun at one or two of the company's outlets. The company failed to react. On February 10th defendants visited the manager of Kresge's largest Cleveland store in which plaintiff had a concession outlet. They told the manager that they hoped to avoid picketing his store, but that unless the plaintiff met with them it probably could not be avoided. When no change in the company attitude resulted, picketing was extended on February 14th to include a total of five of the seven retail outlets. It has continued since that time. There has been no violence and only minor deviation from idyllic conduct. The bannering is truthful and the picketing must be conceded to be lawful in manner.

On February 10th the company called a meeting of its employees at the Hotel Carter. It expressly disclaimed any desire or intention to influence the employees, but as a result of the meeting individual employe's contracts for renewable three months periods were presented and signed individually by each employe present. Within a week all twenty-four of plaintiff's employees had signed such a contract. These were in the form of those considered in the Crosby case infra, and obviously intended to bring this controversy within the purview of that case.

The union questions the jurisdiction of this Court over the subject matter. We have been afforded the opportunity to read the recent opinion of Judge McNamee of the United States District Court in the Richman Bros. Case. We adopt his well reasoned conclusion as authority for state court jurisdiction,—Richman Bros. v. Amalgamated Clothing Workers, No. 29671.

The important question in this case is whether or not the action taken by the union is for an unlawful purpose and contrary to the public policy of the State of Ohio. This public policy may be announced either by the Constitution, the Legislature or the courts of the state. In Ohio there is an absence of Constitutional and statutory declaration.

The leading case in Ohio is that of **Crosby v. Rath, 136 Oh St, 352.** This decision has not been modified, distinguished nor overruled by the Supreme Court since its pronouncement in 1939. Because of its importance we have read the briefs and some of the record. The issue in that case was clearly stated on page 3 of the brief of the American Federation of Labor appearing as amicus curiae:

"May the defendant advise the public that she does not employ union help?"

In the Crosby case there was no dispute between the plaintiff and her employees. There is no such dispute here. In the Crosby case the purpose was to compel the employer to use union labor. That is the purpose here, but in this case the union goes further and insists that the employer indulge in conduct that will induce the present employees to affiliate with the plaintiff union.

In the Crosby case the court approves the following quotation from an Indiana opinion:

"The right to contract, the right to do business, and the right to labor freely and without restraint are all constitutional rights equally sacred, and the privilege of free speech cannot be used to the exclusion of other constitutional rights."

The Supreme Court of this state in this case decided that an employer has no right to use the weight of his economic relationship with his employe to coerce or induce that man to abstain from membership in any particular union nor to coerce or induce him to join a union or select any particular bargaining agent. A transgression of this rule of conduct is therefore unlawful.

As a trial court, a court of first impression, we are bound to follow the decisions of our court of last resort. The obvious effort of the plaintiff union here is to attain the active cooperation of the employer in its effort to organize his business. The picketing and bannering, lawful in manner, are unlawful in purpose.

The Supreme Court of the United States denied a writ of certiorari in the Crosby case, and on the same day decided the case of the American Federation of Labor v. Swing, 312 U. S., 321, 85 L. Ed. 855.

Some of the trial courts in Ohio took the view that the Swing case overruled in effect the authority of the Crosby case, and from 1941 until 1950, there was a period of confused thinking and a variety of conclusions.

On May 8th, 1950, much of this confusion was dissipated. Mr. Justice Frankfurter in Local 309 v. Haake, 339 U. S., 460, 94 L. Ed. 985, made the following contribution:

"We must start with the fact that while picketing has an ingredient of communication it cannot dogmatically be equated with the constitutionally protected freedom of speech. Our decisions reflect recognition that picketing is "indeed a hybrid." * * * The effort in the cases has been to strike a balance between the constitutional protection of the element of communication in picketing and the power of the states to set the

limits of permissible contest open to industrial combatants. * * * A state's judgment on striking such a balance is of course subject to the limitations of the Fourteenth Amendment. Embracing, as such a judgment does, however, a state's social and economic policies, which in turn depend on knowledge and appraisal of local social and economic factors, such judgment comes to this court bearing a weighty title of respect."

In that case the court held that the Fourteenth Amendment did not prevent a state court from use of the injunction to prohibit the picketing of a business conducted by the owner himself to compel him to comply with a demand to become a union shop.

Proceeding, Mr. Justice Frankfurter said:

"Whether to prefer the union or a self-employer in such a situation, or to seek partial recognition of both interests, and, if so, by what means to secure such accommodation, obviously present to a state serious problems. There are no sure answers, and the best available solution is likely to be experimental and tentative and always subject to the control of the popular will. That the solution of these perplexities is a challenge to wisdom and not a command of the Constitution, is the significance of Senn v. Tile Layers, 301 U. S., 468, 81 L. Ed. 1229.

In Building Service Union v. Gazzam, 338 U. S., 903, 94 L. Ed., decided the same day, the court had under consideration a statute of the State of Washington which protected the worker from interference, restraint or coercion by an employer in the selection by an employee of his union or bargaining agent. The picketing was peaceful. The court held that:

"Picketing of an employer to compel him to coerce his employee's choice of a bargaining representative is an attempt to induce a transgression of the public policy of the State of Washington, and an injunction to restrain such picketing is not an unwarranted encroachment upon rights protected by the Fourteenth Amendment."

In delivering the opinion Mr. Justice Minton said:

"This court has said that picketing is in part an exercise of the right of free speech guaranteed by the Federal Constitution. * * * But since picketing is more than speech and establishes a locus in quo that has far more potential for inducing action or non action than any message the pickets convey, this court has not hesitated to uphold a state's restraint of acts and conduct which are an abuse of the right to picket rather than a means of peaceful and truthful publicity."

These decisions have recently, March 16th, 1953, been reaffirmed in the case of Local of Journeymen Plumbers v. Graham, Justice Burton delivering the opinion:

The defendants disclaim any intention to interfere with the employment contracts between the plaintiff and its individual employees. For this reason we predicate our conclusion solely upon the intent of the union to coerce the employer to assist it in its efforts to organize.

An entry may be drawn enjoining the picketing.