**GRIMES & HAUER, INC., Plaintiff-Appellee, v. POLLOCK, individually, etc. et, Defendants-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22855. Decided November 16, 1953.

Stanley, Smoyer & Schwartz, Cleveland, for plaintiff-appellee.
Smoot & Riemer, Cleveland, for defendants-appellants.

### OPINION

PER CURIAM:

This is an appeal on questions of law from a judgment of the Court of Common Pleas, granting plaintiff a permanent injunction enjoining and restraining the defendants from picketing, bannering or patrolling the streets or sidewalks adjacent to plaintiff's places of business in Cuyahoga County.

Two grounds of error are assigned: (1) that the court lacked jurisdiction; (2) that the court erred in granting the injunction.

The essential facts are not in dispute. It is conceded that the picketing was for organizational purposes, there being no solicitation of plaintiff's employees to become members of the Union. Instead there was tendered to plaintiff a proposed bargaining contract between plaintiff and defendants, by the terms of which plaintiff's employees would be compelled to become members of the local union as a condition of their continued employment. Upon plaintiff's failure to sign the proposed contract, defendants proceeded to picket and banner.

We have carefully examined the record and have considered the arguments of counsel, both orally and by way of briefs, and have concluded that the judgment should be affirmed for the reasons generally set forth in the opinion of the trial court. The authorities therein cited and quoted are, in our opinion, controlling and decisive of the issues here involved.

Since the judgment in the instant case (March 19, 1953), **65 Abs 499,** the Court of Apeals of the Ninth Appellate District (Summit County), in the case of **Bean v. Local Union No. 698, 94 Oh Ap 361,** decided July 1, 1953, held in an opinion by Stevens J., as follows:

"In the absence of a dispute between employer and employees, or between the union and the employer or employees, a labor union may not engage in organizational picketing, even though peaceful, for the purpose of bringing pressure to bear upon the employer to require his employees to join the union." (syllabus)

There is a very close analogy between Bean v. Union, supra, and the instant case. We are of the opinion that the reasoning and authorities therein cited are likewise applicable to the instant case.

Judgment affirmed. Exceptions noted. Order see journal.

HURD, PJ, KOVACHY, J, SKEEL, J, concur.

## ON REHEARING

No. 22855. Decided May 26, 1954.

## OPINION

By KOVACHY, J:

This is a rehearing of a previous decision of this court.

On November 16, 1953, we affirmed a judgment of the Court of Common Pleas which granted an injunction to plaintiff-appellee, prohibiting defendants-appellants from picketing its places of business in Cuyahoga County. Our decision was based upon the then prevailing policy of the State of Ohio, relating to injunctions in labor disputes. After our decision, the Supreme Court of the United States on December 14, 1953, handed down a sweeping decision in the case of Garner v. Teamsters' Union, 346 U. S. 485, wherein it held that the National Labor Relations Board had exclusive jurisdiction in certain cases involving interstate commerce. Thereafter, and within term, an application for rehearing was filed by defendants-appellants, by reason of the Garner decision. It was because of the possible impact of that case upon the instant case that we granted a rehearing, to determine what bearing, if any, it may have on the case here before us on appeal on questions of law.

Plaintiff-appellee, Grimes & Hauer, Inc., is a corporation organized under the laws of Pennsylvania and licensed to transact business in the State of Ohio, and is engaged in interstate commerce processing poultry. It operates seven retail outlets for its products in Cleveland, five of them under concession agreements with the S. S. Kresge Company. Defendants-appellants are Sam Pollock, individually and as International Representative of Amalgamated Meat-cutters and Butcher Workmen of North America, A. F. L. Local Union 427, and the Union itself, Amalgamated Meat-cutters and Butcher Workmen of North America, A. F. of L. Local Union 427; Daniel J. DeSantis, Individually and as President of Amalgamated Meat Cutters and Butcher Workmen of North America, A. F. of L. Local Union 427; Francis J. Kilbane, individually and as Business Representative of the Union; and Michael L. Koeber, individually and as Business Representative of said Union.

The membership of the Union comprise a substantial number of persons employed in this industry in this locality.

The trial court's conclusion was that the sole intent of the defendants was "to coerce the employer to assist it in its efforts to organize" and that the picketing, though lawful in manner, was unlawful in purpose and therefore, contrary to the public policy of the State as announced by the Supreme Court of Ohio in the case of **Crosby v. Rath, 136 Oh St 352.**

Our decision affirmed the judgment of the trial court, for the reasons generally set out in its opinion as well as on the authority of **Bean v. Local Union No. 698, 94 Oh Ap 361,** the syllabus of which reads:

"In the absence of a dispute between employer and employees, or between the union and the employer or employees, a labor union may not engage in organizational picketing, even though peaceful, for the purpose of bringing pressure to bear upon the employer to require his employees to join the union."

Defendants picketed plaintiff's places of business for the purpose of coercing the plaintiff employer to get its employees to join their Union through means of a written agreement entered into between plaintiff and defendants, or any other means. The picketing was peaceful and orderly in manner. Part of it amounted to secondary boycott since it included the Kresge stores. Four days after the commencement of the picketing, the plaintiff for the first time entered into written contracts with its employees for renewable three-month periods.

The controlling facts in the instant case are well nigh identical to those in the Garner case. Each employer is engaged in interstate commerce; each has twenty-four employees; none in this case belong to the Union—four employees in the Garner case; the pickets were not employees; no controversy, labor dispute or strike was in progress and the employers had not objected to their employees joining the Union; the picketing, moreover, was peaceful and orderly and primarily intended as a form of coercion on the employer to compel and influence its employees to join the Union.

The legal basis for the granting of an injunction by the trial court in each case, however, was dissimilar in that in this case the trial court

relied upon the policy with respect of the matter established by the Supreme Court of Ohio, whereas in the Garner case, the trial court invoked its own State's Labor Relations Act. The difference between such propositions of law, in our opinion, is one of form rather than of substance, and consequently alike in force and effect. In the practical affairs of life it makes no difference whether the policy of the State is determined by judicial decision or legislative enactment.

Now the Taft-Hartley Act of Congress deals with the same matter. It condemns the kind of conduct engaged in by the Union in each of these cases as unfair labor practice.

Sec. 8 (b), 61 Stat. 141, 29 U. S. C. (Supp. III) Sec. 158 (b):

"It shall be an unfair labor practice for a labor organization, or its agents * * * (2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a), (3) or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership * * *."

61 Stat. 140, 29 U. S. C. (Supp. III) Sec. 158 (a):

Subsection (a) (3) reads in part: "It shall be an unfair labor practice for an employer * * * (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization * * *."

The same act designates a secondary boycott as an unfair labor practice, 29 U. S. C. Sec. 158 (b) (4) (A):

"forcing or requiring any employer or self-employed person to join any labor or employer organization or any employer or other person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor or manufacturer, or to cease doing business with any other person;"

We are unanimously of the opinion, in view of the factual and legal identity of the instant case with that of the Garner case, that the ruling of the Supreme Court of the United States in the latter case is applicable to and controlling in this case.

The first paragraph of the syllabus of the Garner case reads:

"Petitioners were engaged in Pennsylvania in an interstate trucking business. Only a small minority of its employees were members of respondents' union. No labor dispute or strike was in progress, and petitioners had not objected to their employees joining the union. Respondents kept two pickets at petitioner's loading platform, to coerce petitioners into compelling or influencing their employees to join the union. The picketing was peaceful, but petitioners' business fell off 95% because employees of other carriers refused to cross the picket line. Held: Petitioners' grievance was within the jurisdiction of the National Labor Relations Board to prevent unfair labor practices under the Labor Management Relations Act and was not subject to relief by injunction in the state courts."

The complaint of the plaintiff, it would seem, is exclusively within the jurisdiction of the National Labor Relations Board and is not subject to relief by injunction in the state courts.

Plaintiff contends that even if the above be true that the defendants picketed to compel plaintiff to violate the provisions of its employment contracts and that the Taft-Hartley Act contains no remedy for inducing Breach of Contracts, whereas the law of the State of Ohio does confer jurisdiction in that regard upon the courts of the State. The trial court in its opinion stated:

"The defendants disclaim any intention to interfere with the employment contracts between the plaintiff and its individual employees. For this reason we predicate our conclusion solely upon the intent of the union to coerce the employer to assist it in its efforts to organize."

It cannot be denied that the picketing in this case, if it attained its avowed purpose, would lead to the interference of the mentioned contracts, and the subsequent violation of the private rights of the parties involved herein. However, such effect, if it occurred, would be incidental to the violation of the public right recognized in the Taft-Hartley Act, which when enforced obviates the necessity of seeking judicial determination of the private rights.

It follows, therefore, that the National Labor Relations Board has the power alone to act in the matter, and to provide full relief for the wrongs complained of. To hold otherwise would deprive the National Labor Relations Board of the exclusive jurisdiction conferred upon it by Congress in a subject matter clearly within its purview, and prevent it from exercising such jurisdiction freely and fully and completely freed of all restraints from other tribunals. Capital Service Inc. etc v. National Labor Relations Board, decided by the Supreme Court of the United States, May 17, 1954, 22 L. W. 4241; and the following paragraphs of the syllabus of the Garner case:

"(b) The same considerations which prohibit federal courts from intervening in such cases, except by way of review or on application of the National Labor Relations Board, and which exclude state administrative bodies from assuming control of such matters, preclude state courts from doing so."

"(c) When federal power constitutionally is exerted for the protection of public or private interests, or both, it becomes the supreme law of the land and cannot be curtailed, circumvented or extended by a state procedure merely because such procedure will apply some doctrine of private rights."

We accordingly hold that the Court of Common Pleas of Cuyahoga County lacked jurisdiction to hear a case involving violation of federal law, in an industry engaged in interstate commerce and it was therefore error to deny defendants' motion to dismiss for lack of jurisdiction.

Judgment reversed and final judgment for the defendants. Exceptions. Order see journal.

HURD, PJ, SKEEL, J, concur.