Zimmerman, J.
Was the Court of Appeals correct in its determination? In answering this question the salient facts to be borne in mind are that plaintiff is a foreign corporation engaged in interstate commerce, *376 that the picketing of plaintiff’s places of business by defendants was concededly of a peaceful and orderly nature, that the Constitution of Ohio does not contain any express provision relating to the “right to work,” and that the General Assembly of Ohio has enacted no legislation on this subject.
Upon examination of the case of Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776, supra (346 U. S., 485, 98 L. Ed., 228, 74 S. Ct., 161), we can not escape the conclusion that the Supreme Court of the United States, under facts similar to those existing in the instant case, has definitely said that the Labor Management Relations Act applies and that state courts may not intervene.
In that case a labor union peacefully picketed the premises of an interstate trucking company in Pennsylvania. Such picketing had for its purpose the unionization of the company’s employees. There was no labor dispute between the company and its employees and the company did not object to its employees becoming union members. At the instance of the employer, a Pennsylvania Court of Common Pleas enjoined the picketing as in violation of the State Labor Relations Act. On appeal the Supreme Court of Pennsylvania (373 Pa., 19, 94 A. [2d], 893), although finding that the object of the picketing was to coerce the employer to have its employees join the union, reversed the judgment of the lower court, on the ground that the situation came within the jurisdiction of the National Labor Relations Board to prevent unfair labor practices, and, therefore, state courts were precluded from assuming jurisdiction.
In its opinion, in affirming the judgment of the Pennsylvania Supreme Court, the Supreme Court of the United States said, in reference to the Labor Management Relations Act:
“Congress did not merely lay down a substantive *377 rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies.”
So far as we can ascertain, the Garner case represents the latest pronouncement of the Supreme Court of the United States directly on a set of facts resembling those in the instant case and lays down the rule that a state court does not possess the power to enjoin union conduct, such as the picketing of an interstate employer’s premises to induce the unionization of its employees, since such activity presents the question of an unfair labor practice within the meaning of the terms of the Labor Management Relations Act which, initially at least, is exclusive.
Attention is also directed to Capital Service, Inc., v. National Labor Relations Board (C. C. A. 9, 1953), 204 F. (2d), 848, affirmed, 347 U. S., 501, 98 L. Ed., 887, 74 S. Ct., 699, where picketing, persuasion exerted on employees and customers and a secondary boycott by a labor union were involved and where it was held that the National Labor Management Relations Act applied to the exclusion of injunctive relief by a state court. And see Gulf Shipside Storage Corp. v. Moore (La., March 21, 1955).
The case of United Construction Workers v. Laburnum Construction Corp., 347 U. S., 656, 98 L. Ed., 1025, 74 S. Ct., 833, is cited in support of the proposi *378 tion that the courts of Ohio have jurisdiction in a case like the one at bar. However, an examination of the Laburnum case shows that it was a tort action, dealt with an entirely different situation from the one presented here and is not controlling in the instant controversy.
In that case the court specifically pointed out that, although the Labor Management Relations Act sets out exclusive procedural remedies for preventing unfair labor practices which prevail over the right of a state court to act, it does not prescribe any remedy for “dealing with the consequences of tortious conduct already committed” and hence the states are still at liberty to provide their own procedure in such cases.
Nor do we think the case of Milwaukee Boston Store Co. v. American Federation of Hosiery Workers (Wis., 1955) is in point. There a labor union picketed a store for the purpose of causing the store’s customers to refrain from buying a certain brand of hosiery sold by the store because the union was engaged in a dispute with the manufacturers of the hosiery. The store brought an action in the state court to enjoin the picketing, in which it was successful. On appeal, the Supreme Court of Wisconsin modified the order of the trial court and, as modified, affirmed the same. The Supreme Court held that there had been no pre-emption by Congress over the type of secondary picketing of neutrals therein enjoined by the trial court in carrying out the policy of the state as expressed in its statutes prohibiting the same. The court then added that it hoped the United States Supreme Court would pass directly on this important question in the not too distant future.
As to the case of Amalgamated Clothing Workers of America v. Richman Brothers (U. S., April 4, 1955), *379 we adopt the comments of counsel for the defendants herein as follows:
“The precise issue decided by the U. S. Supreme Court in this case was that Section 2283 of the Judicial Code bars federal District Courts from enjoining an employer’s prosecution of state court action for injunction against picketing. However, in so holding, the Supreme Court specifically affirmed that its decisions in Weber v. Anheuser-Busch, Inc., 348 U. S., 468, and Garner v. Teamsters Union, 346 U. S., 485, had disposed of the issue of state courts’ power in peaceful, organizational picketing cases saying:
“ ‘We may assume that the conduct in controversy [peaceful picketing] is subject to whatever relief the Taft-Hartley Act may afford and, therefore is outside state authority.’ ”
Several reasons are advanced by counsel for plaintiff as to why the Garner case is not applicable and as to why the courts of Ohio have jurisdiction over the subject matter of this action.
As has been pointed out, in Ohio there is no constitutional provision relating directly to the “right to work,” and the General Assembly of this state has not enacted any legislation on that subject. However, counsel for plaintiff rely on Section 164 (b), Title 29, U. S. Code, which reads:
“Nothing in this act [Section 151 et seq. of this Title] shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any state or territory in which such execution or application is prohibited by state or territorial law.”
By virtue of such subsection it is contended that the decisions of this court, notably, Crosby v. Rath, supra (136 Ohio St., 352, 25 N. E. [2d], 934), and W. E. Anderson Sons Co. v. Local Union No. 311, Interna *380 tional Brotherhood of Teamsters, Chauffeurs, Stablemen & Helpers of America, 156 Ohio St., 541, 104 N. E. (2d), 22, have established the “right to work” law in Ohio whereby employees working under agreements with their employers may not be required, against their wish, to become members of a union as a condition to their employment.
In the first place we believe that Section 164 (b) has reference to a constitutional provision or a legislative enactment. In the second place, if this is not so, we believe it can not fairly be said that the Crosby and Anderson cases bring Ohio within the exception contained in Section 164 (b). Those cases hold that picketing was unlawful under the precise facts there in issue, but to go further and say on authority of such cases that the firm policy of Ohio is to prohibit agreements of the kind described in Section 164 (b) is hardly tenable.
Counsel for plaintiffs seek also to bring the case within the bounds of state law on the basis that the Labor Management Relations act and the Garner case deal only with public rights, and since private rights are here involved as represented by the contract of employment entered into between plaintiff and its employees, which by their picketing defendants would nullify, Ohio courts may intervene.
In view of the language used in the latter part of the opinion in the Garner case, this argument is not persuasive. As we read that opinion, both public and private rights are comprehended in the Labor Management Relations Act.
In the event this controversy should ultimately be taken before the National Labor Relations Board and that agency should decline to entertain the matter, another question might arise with which we have no present concern.
In our opinion, no error is apparent in the judg *381 ment of the Court of Appeals, and such judgment is, therefore, affirmed.

Judgment affirmed.

Matthias, Stewart, Bell and Taet, JJ., concur. Weygandt, C. J., and Hart, J., dissent.