FAXON HILLS CONSTRUCTION CO., APPELLEE, *v.* UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA ET AL., APPELLANTS.*

(No. 8224—Decided July 21, 1958.)

*Messrs. Taft, Stettinius & Hollister, Mr. J. Mack Swigert* and *Mr. Rob J. Taylor,* for appellee.

*Mr. Robert A. Wilson* and *Mr. Francis X. Ward,* for appellants.

LONG, J. This case was remanded to this court for further proceedings in accordance with the decision of the Supreme Court in *Faxon Hills Construction Co.* v. *United Brotherhood of Carpenters and Joiners of America,* 168 Ohio St., 8, 151 N. E. (2d), 12. In compliance therewith, this court, on June 16, 1958, decided that a decree similar to the one entered by the Court of Common Pleas should be entered here. Thereupon, defendants, appellants herein, filed a motion for reconsideration of that de-

*Motion to certify the record overruled, January 21, 1959. Appeal dismissed, 168 Ohio St., 497. For earlier opinion of Court of Appeals, see *ante,* 21.

cision by this court. In that motion, appellants take the position that this court was unanimous in holding that a lawful labor dispute existed from the beginning. We did not so decide. Such a decision would go to the merits of the case, which was not decided. The majority held that "the jurisdictional question takes precedence over any consideration of the merits of the case." It is my opinion that our decision of June 16, 1958, should stand. I have again reviewed the facts of this case and, quoting from the testimony of Faxon's superintendent, "no one indicated that he was in the Union or wanted to be represented by the Union." This was reported to Faxon after he received a telegram from the Union, in which it stated that the Union represented a majority of all of Faxon's construction workers and in which the Union demanded that it be recognized as exclusive bargaining agent for such employees. Faxon, himself, asked each of such employees, individually, whether he wanted the Union to represent him and "every man said no." The Union then served notice by telegram on Faxon: "Will be at your office Monday, Oct. 10, 1955, at 10 a. m., to begin negotiations for a contract." In reply to this, Faxon sent a telegram to the Union suggesting an election, conducted by the National Labor Relations Board; instead of conforming to this suggestion, the Union called a strike and picketed Faxon by banner and hand bills. In my opinion, there is no evidence that, when the strike started, there were any employees of Faxon who were members of the Union, or any evidence that any of them wanted to be members; the evidence is to the contrary. The entire record indicates that, up to the time of the strike, the Union was trying to get a so-called "closed shop" from Faxon, as indicated by the constitutions of the Unions. There is no evidence of a legitimate dispute when the strike was called. The banner itself indicates that the purpose of the strike was to "seek recognition of the Union as bargaining agent of employees of Faxon." With none of the employees desiring representation by the Union, how can there be a legitimate trade dispute? *P. & S. Operating Co.* v. *Brotherhood of Painters and Paper Hangers of America,* 168 Ohio St., 73, 151 N. E. (2d), 364.

Certain cards were offered in evidence in this court indicating membership in the Union; all of them, except one, were

signed before October 7, 1955, at which time not a single employee, according to the uncontradicted testimony, wanted to be represented by the Union. See: *Crosby* v. *Rath,* 136 Ohio St., 352, 25 N. E. (2d), 934, and *La France Electrical Construction & Supply Co.* v. *International Brotherhood of Electrical Workers,* 108 Ohio St., 61, 140 N. E., 899.

Coming now to the second reason why we should enter the same decree as was entered by the trial court, the evidence is undisputed that plaintiff, during the spring of 1956, whether because of economic conditions, or because he was weary of his experiences with the Unions, decided to subcontract all of the work which had theretofore been performed by the employees who might be eligible to membership in the Unions. Faxon retained only three employees—two expediters and one guard. None of his former employees, after termination of their employment, either, at the time they left Faxon, or at any future time, appeared on the picket line. Again, there is no dispute between the employer and his employees; the picketing is conducted by persons who were never employed by Faxon, and who do not represent anyone so employed. *Chucales* v. *Royalty,* 164 Ohio St., 214, 129 N. E. (2d), 823. After Faxon advised the Union that he was subcontracting, one Konyha began negotiating with Faxon on behalf of defendants. In the record, it appears that Konyha insisted that Faxon fire the subcontracting carpenters, who were doing the rough and finishing work, and hire subcontractors who employed Union men, or else force the subcontractors to make their men join the Union. Konyha said he had sole authority to remove the picket line and, unless Faxon agreed to his terms, the picket line would stay; even the ''green men,'' according to Konyha's terms, would have to join the Union in 60 days. While there is no decision of our Supreme Court on this question, it seems to me, that, whether subcontracting creates a situation where the former employees become strangers to the former employer or not, in the case at bar, Konyha was demanding of Faxon that he compel such subcontractors to employ only union men, or make them join the Union. The objectives of the Union were just the same after as before the subcontracting. If Faxon had no more employees, according to the demands of Konyha, he must influence his sub-

contractors to make their men join the Union. It seems to me that after the subcontracting arrangement by Faxon, the Union's dispute was with the subcontractors, if any, who were hiring nonunion carpenters. After Faxon's carpenter work was being done by subcontractors, the carrying of the banner of the Union "seeking recognition as bargaining agent of Faxon's employees," as an excuse for striking, has no merit or foundation in fact and is unlawful.

For the foregoing reasons, I think that the same judgment should be rendered by this court as was rendered by the Common Pleas Court.

*Judgment accordingly.*

HILDEBRANT, P. J., concurring. As I read the record herein, I can find no legitimate labor dispute between Faxon Hills Construction Company and its employees at the time the picketing began. Rather it seems patent that the dispute, if any, was between Faxon Hills Construction Company and defendants, in an effort to coerce the employer to require its employees to join a labor union. Apparently, that effort continued even after the relationship of independent contractor was set up on the project.

Under these circumstances, there is ample authority in Ohio for the issuance of an injunction.

MATTHEWS, J., dissenting. In our original opinion, handed down on May 20, 1957, we analyzed the evidence and reached the conclusion that there existed a bona fide dispute between the plaintiff and its employees at the time the picket line was established by the employees, and, as the picketing was free of violence and fraud, or misrepresentation, it was lawful under the laws of Ohio. I am still of the opinion that our conclusion in that respect was correct.

I am further of the opinion that resort to the strategy of substituting independent contractors for the employees to do their work did not transform a lawful strike into an unlawful one.

I am of the opinion that the finding should be for the defendants, and the action dismissed at the plaintiff's cost.